IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHERMAN ANTWAN BROADHEAD, ) <br> AIS #246842, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> SGT. KENDRICK BOYD, et al., ) <br> ) <br> Defendants. ) | CASE NO. 2:16-CV-64-WHA <br> (WO) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### I.  INTRODUCTION

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Sherman Antwan Broadhead, a state inmate. In this complaint, Broadhead challenges the constitutionality of force used against him on March 5, 2014 by officers at the Draper Correctional Facility during a cell extraction and the failure to protect him from this use of force. Broadhead names Sgt. Kendrick Boyd, Sgt. Paul Sanders, Lt. Michael Winters, Sgt. Curtis Nolen, Sgt. Edmond Cooper, Sgt. Jackie Pettway and Officer Dan'Terrio Scullock, correctional officials employed at Draper at the time of the incident, as defendants. Broadhead seeks monetary damages for the alleged violations of his constitutional rights and requests that criminal charges be brought against the defendants for their actions. Doc. 1 at 4.

The defendants filed an answer, special reports and supporting evidentiary materials, including affidavits, a digital recording of the cell extraction and certified prison

records, addressing Broadhead's claims for relief. In these documents, the defendants deny they acted in violation of Broadhead's constitutional rights. After receipt of the defendants' special reports, the court issued an order directing Broadhead to file a response to the reports, including affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 54 at 2. The order specifically cautioned Broadhead that "**unless within fifteen (15) days from the date of this order a party … presents sufficient legal cause why such action should not be undertaken** … the court may at any time [after expiration of the time for the plaintiff filing a response] and without further notice to the parties (1) treat the special report[s] and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 54 at 3. Defendant filed a response in opposition to the special reports. *See* Docs. 55, 57. Pursuant to the foregoing order, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment.

Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint, the plaintiff's affidavit in response to the initial special report and his responses in opposition to the reports, the court concludes that the defendants' motion for summary judgment is due to be denied as to the plaintiff's allegations of excessive force and failure to protect brought against them in their individual capacities, and granted in all other respects.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Beard v. Banks*, 548 U.S. 521, 529 (2006) (holding that court "must examine the record to see whether the [party moving for summary judgment], in depositions, answers to interrogatories, admissions, affidavits and the like, has demonstrated the absence of a genuine [dispute] of material fact, and his entitlement to judgment as a matter of law.") (internal citations and quotation marks omitted); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his

3

burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

When the moving party meets its evidentiary burden, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. At this juncture, the court "must determine whether [the plaintiff], who bears the burden of persuasion has by affidavits or as otherwise provided in Rule 56 … set forth specific facts showing that there is a genuine [dispute of material fact] for trial." *Beard*, 521 U.S. at 529 (internal citations and quotation marks omitted); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when a party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in

substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011).

> [This court] recognize[s] that at this stage [it] must draw "all justifiable inferences in [the plaintiff's] "favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In doing so, however, we must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. *Overton [v. Bazetta*, 539 U.S. 126, 132 (2003)]. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard*, 548 U.S. at 530.

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *McKeithen v. Jackson*, 606 F. App'x 937, 938 (11th Cir. 2015); *Ivory v. Warden*, 600 F. App'x 670, 675 (2015). Thus, Broadhead's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough review of all the evidence contained in the record, including the DVD submitted by the defendants. After this review, the court finds that Broadhead, through the submission of his sworn complaint, the evidentiary materials submitted in support thereof and his responses to the defendants' report, has demonstrated a genuine dispute of material fact in order to preclude entry of summary judgment on his excessive force and failure to protect claims brought against the defendants in their

5

individual capacities. The defendants, however, are entitled to summary judgment on Broadhead's remaining claims for relief.

### III. DISCUSSION

### A. Absolute Immunity

To the extent that Broadhead brings claims against the defendants in their official capacities and seeks monetary damages, they are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, … treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).

> "[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]." *Alabama v. Pugh*, 438 U.S. 781, 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 131 S.Ct. 1632, 1637–38, 179 L.Ed.2d 675 (2011). "A State's consent to suit must be 'unequivocally expressed' in the text of [a] relevant statute." *Sossamon v. Texas*, 563 U.S. 277, 131 S.Ct. 1651, 1658, 179 L.Ed.2d 700 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). "Waiver may not be implied." *Id*. Likewise, "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 786, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)).

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit. *Pugh,* 438 U.S. at 782, 98 S.Ct. 3057 (citing Ala. Const. art. I, § 14.)

*Selensky,* 619 F. App'x at 849. "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence,* Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)). In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

### B. Relevant Facts[1]

On March 5, 2014, Broadhead was in handcuffs from the previous day. According to Broadhead, on this date around 10:00 a.m. "officer Mims did come to my cell and ask me to give him the handcuffs I was wearing." Doc. 29 at 2. Broadhead advised Mims that he "needed a body chart" because his arms and wrists were hurting. Doc. 29 at 2. Officer

---

[1]The facts concerning the cell extraction are gleaned from the complaint and the DVD. At this stage of the proceedings, the facts are viewed in a light most favorable to the plaintiff. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (In addressing a party's motion for summary judgment, all evidence "must be viewed in the light most favorable to the opposing party."); *Anderson*, 477 U.S. at 255 (In ruling on a summary judgment motion, "all justifiable inferences [from the evidence] are due to be drawn in [the non-movant's] favor.").

Mills exited the area without removing Broadhead's handcuffs. Subsequently, correctional officials assembled a cell extraction team composed of defendants Boyd (right foot), Sanders (right hand), Cooper (left foot), Pettway (left hand) and Scullock (electric shield) to remove Broadhead from his cell. Defendant Winters commanded the team during the cell extraction and defendant Nolen served as the videographer. Broadhead maintains, and the DVD shows, that immediately prior to the cell extraction no officer ordered Broadhead to submit to removal of his handcuffs.

Upon his entry into the cell, Scullock engaged Broadhead with an electric shield while Boyd and Cooper placed shackles on Broadhead's legs. The officers then pulled Broadhead to the center of the cell and gained control of his legs. Broadhead, however, did not allow the officers to get control of his arms. A struggle ensued between Broadhead and defendants Scullock, Pettway and Sanders as the latter attempted to remove the handcuffs from Broadhead so they could place his arms behind his back. Broadhead resisted these efforts. It appears from the DVD that Scullock is positioned on Broadhead's back while Pettway is attempting to gain control of Broadhead's left hand. The right hand officer, identified by the defendants as Sanders, is holding Broadhead's head to the floor. With Broadhead seemingly under control but still resisting the officers' efforts to place his hands behind his back, the officer on Broadhead's right front side appears to drop his knee on Broadhead's head several times. DVD at 4:12–4:26. Broadhead contends that he suffered swelling and knots to his head, a broken nose, a right eye injury, a busted lip, internal bleeding, pain in his left ribs and headaches due to the force used against him.

8

Broadhead challenges the constitutionality of the force used by the officers during the cell extraction. Specifically, he maintains that there was no need for the use of force because no order requiring him to submit to removal of the handcuffs was issued immediately prior to the cell extraction and, if such an order had been given to him at that time, he would have allowed the officers to remove the handcuffs. Broadhead also argues that the amount of force used by defendants Boyd, Sanders, Cooper, Pettway and Scullock during the cell extraction was excessive, as these officers, without justification, shocked him twice with the electric shield, choked him, attempted to rip out his eye, pushed his face into the floor and kneed him in the head while his head was held to the floor. Also, viewed in a light most favorable to Broadhead, the evidence before the court suggests that defendants Nolen and Winters observed the force used against Broadhead but failed to intervene.

### C. Excessive Force and Failure to Protect

(i) Qualified Immunity. With respect to Broadhead's excessive force and failure to protect claims lodged against the defendants in their individual capacities, the defendants argue that they are entitled to qualified immunity.

> Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Skop* [*v. City of Atlanta*, 485 F.3d 1130, 1136–37 (11th Cir. 2007)]. To defeat qualified immunity, a plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established. *Fennell* [*v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam)]. In Eighth Amendment excessive force cases, however, "the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly

9

established to be a violation of the Constitution." *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2002).

*Bowden v. Stokely*, 576 F. App'x 951, 954–55 (11th Cir. 2014). "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). "While … there is no per se rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate. *See Skrtich*, 280 F.3d at 1301." *Bowden*, 576 F. App'x at 956. Accordingly, this court will consider whether the plaintiff's allegations that Boyd, Sanders, Cooper, Pettway and Scullock maliciously and sadistically used excessive force against him, while Winters and Nolen witnessed the attack and failed to intervene – which the court must take as true for purposes of summary judgment – sets forth a violation of his Eighth Amendment rights.

(ii) <u>Excessive Force and Failure to Protect</u>. Claims of excessive force by correctional officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a

constitutional violation." *Id*. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force … are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. [*Hudson*, 503 U.S.] at 7, 112 S.Ct. (1992). "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Ibid*. (quoting *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078. The extent of injury may also provide some indication of the amount of force applied.

*Wilkins*, 559 U.S. at 37. The Court further directed that "the relatively modest nature of [an inmate's] alleged injuries will no doubt limit the damages he may recover [if ultimately successful on his claims]." *Id*. at 40.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7–8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is

11

> tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-01.

> "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9, 112 S.Ct. at 995[.]"

*Wilkins*, 559 U.S. at 38. Thus, in an excessive force case such as the one at hand,

> the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam) (quotation marks omitted) (concluding that a gratuitous beating by prison guards, even without injuries requiring medical attention, violated a prisoner's Eighth Amendment rights)."

*Bowden*, 576 F. App'x at 953.

Broadhead alleges that on March 5, 2014 defendants Boyd, Sanders, Cooper, Pettway and Scullock used excessive force against him. In support of his claim, Broadhead contends that these officers entered his cell without reason or warning, shocked him with an electric shield, dragged him across the floor, choked him, and attempted to pull out his right eye. Broadhead further complains that after he assumed a defenseless position with his head held to the floor one of the defendants struck him in the head two or more times with his knee. Doc. 29 at 3; DVD at 4:12–4:26. In addition, Broadhead complains that defendants Winters and Nolen failed to intervene on his behalf to stop each of the alleged acts of excessive force and that defendants Boyd, Cooper, Pettway and Scullock failed to intervene when defendant Sanders repeatedly struck him in the head.

12

The officers eventually gained control of Broadhead and carried him to the shower. Nurse Talley entered the segregation unit to perform a medical assessment of Broadhead. Nurse Talley did not enter the shower with Broadhead because, although he was "alert and oriented" he was "uncooperative." Doc. 21-2 at 2. Thus, she was "only able to assess chest area, face [and] front of both arms[,] unable to assess below the waist and back of inmate [as] inmate refused to show. Hands were in hand cuffs." Doc. 21-2 at 2. Nurse Talley informed officers that Broadhead could be returned to a cell and advised Broadhead to "sign up for sick-call for any issues." Doc. 21-2 at 2.

The defendants deny Broadhead's claims regarding the use of excessive force and the alleged failure to protect him from this force. Specifically, the defendants deny using excessive force against Broadhead and maintain they did not witness any other officer use force beyond that necessary to gain control of Broadhead during the cell extraction. Thus, they contend there was no need for their intervention to protect Broadhead. The defendants also maintain that the use of force was necessary because Broadhead failed to comply with direct orders that he allow correctional officials to remove his handcuffs.

Even though the defendants dispute the version of events presented by Broadhead, the court is required at this stage of the proceedings to view the facts in the light most favorable to Broadhead and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Collection Service, Inc.*, 739 F.3d 606, 608 (11th Cir. 2014). Broadhead maintains that defendants Boyd, Sanders, Cooper, Pettway and Scullock undertook actions against him—i.e., shocked him with an electric shield, dragged him across the floor of his cell, choked him, gouged him in the eye and used a knee to repeatedly

13

strike him in the head—without provocation and while he posed no threat to them or the security of the facility. The pleadings filed by Broadhead also demonstrate that defendants Winters and Nolen witnessed these uses of force while defendants Boyd, Cooper, Pettway and Scullock likewise witnessed the blows to Broadhead's head without intervening to protect Broadhead. Finally, Broadhead contends that the challenged actions caused him to suffer various injuries, including a broken nose, knots and bruising on his head, a busted lip, pain in his left ribs and the coughing up of blood. In sum, Broadhead contends "that he was the victim of an unprovoked attack in circumstances that did not [warrant the amount of force used]." *Bowden*, 576 F. App'x at 954.

As previously explained, the defendants deny Broadhead's allegations regarding the use of excessive force and maintain that at no time during the incident was more force used than necessary to subdue and gain control of Broadhead after he repeatedly refused orders to surrender his handcuffs. The defendants also deny witnessing any use of excessive force against Broadhead. They also maintain that prior to the cell extraction Broadhead received several orders to allow his handcuffs to be taken off and he refused to comply with all of these orders. Nevertheless, viewing the facts in the light most favorable to Broadhead, the court concludes that defendants Boyd, Sanders, Cooper, Pettway, Scullock, Winters and Nolen are not entitled to qualified immunity, as the plaintiff has alleged facts sufficient to survive their motion for summary judgment regarding the excessive force and failure to protect claims lodged against them in their individual capacities. *See Skrtich*, 280 F.3d at 1301. Specifically, disputed issues of material fact exist regarding the need for the use of force, the nature of the force used, whether defendants Boyd, Sanders, Cooper, Pettway

and Scullock acted "maliciously and sadistically" to cause harm, and whether defendants Winters, Nolen, Boyd, Cooper, Pettway and Scullock failed to intervene when faced with circumstances which warranted intervention. Consequently, the motion for summary judgment with respect to the claims of excessive force and failure to protect brought against the defendants in their individual capacities for monetary damages is due to be denied.

### D.  Criminal Prosecution of Defendants

To the extent that Broadhead seeks criminal prosecution of the defendants, he is entitled to no relief. A "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Nelson v. Skehan*, 386 F. App'x 783, 786 (10th Cir. 2010) (holding that a plaintiff has no constitutional right to have a defendant prosecuted); *Napier v. Baron*, 198 F.3d 246, 1999 WL 1045169, *1 (6th Cir. 1999) ("[T]he district court properly dismissed [Plaintiff's] complaint as frivolous … [because] contrary to [his] belief, he does not have a constitutional right to have a particular person criminally charged and prosecuted."); *see also Rockefeller v. United States Court of Appeals Office for Tenth Circuit Judges*, 248 F.Supp.2d 17, 23 (D.D.C 2003) (holding that criminal statutes "do not convey a private right of action."); *Risley v. Hawk*, 918 F.Supp. 18, 21 (D.D.C. 1996), *aff'd*, 108 F.3d 1396 (D.C. Cir. 1997) (finding that no private right of action exists under federal statute criminalizing conspiracies to deprive an individual of his constitutional rights); *Gipson v. Callahan*, 18 F.Supp.2d 662, 668 (W.D.Tex 1997) ("Title 18 U.S.C. § 242 makes it a crime to willfully deprive persons under color of law of their rights under the Constitution or laws of the United States.  The statute does not create a private cause of action.  *Powers v. Karen*, 768 F.Supp. 46, 51 (E.D.N.Y. 1991), *aff'd*, 963 F.2d 1552 (2nd Cir. 1992); *Dugar v. Coughlin*, 613 F.Supp. 849, 852 n.1

(S.D.N.Y. 1985).").  Thus, summary judgement is due to be granted in favor of the defendants as to Broadhead's request for their criminal prosecution.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment with respect to the plaintiff's claims for monetary damages made against them in their official capacities be GRANTED and these claims be DISMISSED with prejudice, as the defendants are entitled to absolute immunity from such damages.

2. The defendants' motion for summary judgment as to the plaintiff's request for criminal prosecution of the defendants be GRANTED and this claim be DISMISSED with prejudice.

3. The motion for summary judgment filed on behalf of defendants Boyd, Sanders, Cooper, Pettway, Scullock, Winters and Nolen with respect to the plaintiff's excessive force and failure to protect claims against these defendants in their individual capacities be DENIED.

4. This case be referred to the undersigned for an evidentiary hearing on the plaintiff's surviving claims of excessive force and failure to protect against defendants Boyd, Sanders, Cooper, Pettway, Scullock, Winters and Nolen.

It is further

ORDERED that on or before **February 19, 2019**, the parties may file objections to the Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive,

or general objections will not be considered. Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 4th day of February, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge